TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
STEVEN M. ARKOW
Assistant United States Attorney
Major Frauds Section
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6975
    Facsimile: (213) 894-6269
    E-mail:   steven.arkow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 20-505-FMO |
| Plaintiff, | GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION IN RESPONSE TO DEFENDANT STEVE KATSUYA AKUNE'S SENTENCING POSITION |
| v. | |
| STEVE KATSUYA AKUNE, | **Sentencing: February 17, 2022** |
| Defendant. | |

Pursuant to the Court's Order Granting Government's Unopposed Application To File Supplemental Sentencing Position In Response To Defendant's (Steve Katsuya Akune) Sentencing Position (CR 31), plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Steven M. Arkow, files the *Government's Supplemental Sentencing Position In Response To Defendant Steve Katsuya Akune's Sentencing Position*.

The government's position is based upon the attached memorandum of points and authorities, the files and records in this case, the plea agreement (CR 8), the Presentence Investigation Report (CR 24),

the Disclosed Probation Recommendation Letter (CR 23), First Addendum
to the Presentence Report (CR 28); Defendant's Sentencing Position,
With Exhibits (CR 27); Defendant's Sentencing Position, With Exhibits
(Amended) CR 34 ("Def. Sen. Pos.")[1], the Government's Combined
Concurrence in the Findings of the Presentence Investigation Report
And Position Re: Sentencing of Defendant Steve Katsuya Akune (CR 26)
("Govt. Sen. Pos."), and such further evidence and argument as the
Court may permit.

Dated: January 31, 2022          Respectfully submitted,

                                 TRACY L. WILKISON
                                 United States Attorney

                                 SCOTT M. GARRINGER
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 _____
                                 STEVEN M. ARKOW
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

---

[1] On August 30, 2021, defendant filed defendant's sentencing
position (CR 27).  On January 20, 2022, defendant filed defendant's
sentencing position (Amended) (CR 34).  In this government's
supplemental response, the government cites to the applicable page
number in the defendant's sentencing position (Amended) (CR 34).

1        **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        Defendant argues that his sentence should not include any

4    custody, notwithstanding that the starting point of sentencing in

5    this case is his (unopposed) advisory guidelines range of 41-51

6    months.[1]  Instead, defendant argues for probation, citing as

7    mitigating factors: (1) psychological reasons that purportedly

8    "caused" defendant to steal $2.8 million over eight years from his

9    long-time employer; (2) previously caring for his parents when they

10   were elderly; (3) partial repayment of the money he stole after the

11   victim sued defendant and obtained a default judgment; and (4) health

12   (he takes medication for high blood pressure which is being managed).

13   (Def. Sen. Pos. at 21-25).

14       In the government's sentencing position, the government

15   discussed balancing these mitigating factors—pursuant to which the

16   government moved for a five-level downward variance--along with the

17   aggravating factors, which overall ultimately weigh in favor of

18   imposing a reasonably appropriate sentence of 24 months.  (Gov. Sen.

19   Pos. (CR 26) at 10-14).

20       In sum, the seriousness of defendant's bank fraud scheme to

21   embezzle funds from his corporate employer, the magnitude of the loss

22   in excess of $2.8 million, the repeated and multiple thefts of his

23   employer's funds that continued uninterrupted for about eight years,

24   and the abuse of defendant's position of trust in his role as senior

25

26   _____

27       [1] Defendant agrees that the parties and the U.S. Probation
     Office are in accord that defendant's total offense level is 22,
     corresponding to an advisory guidelines range of 41 to 51 months.
28   (Def. Sen. Pos. at 6; Addendum to the PSR ("Akune makes no objections
     to the PSR.").

manager of the accounting department where his duties included receiving checks and overseeing the accounting for those checks into the company's books and records and corporate bank accounts, weigh strongly against imposing a sentence of probation without any custody.  Moreover, by statute, defendant is not eligible for probation.

The government files this supplemental response to address defendant's arguments for: (1) probation; and (2) restitution less than the full amount of the money he embezzled.

## II.   ARGUMENT

### A.   Defendant's Offense is Statutorily Ineligible for Probation; A Two-Year Sentence is Sufficient, But Not Greater Than Necessary, to Accomplish the Goals of Sentencing

As pointed out by the Probation Office, a sentence of probation is not legally available.  See First Addenddum to PSR (28); PSR ¶¶ 103-04 ("a sentence of probation is not authorized for a Class B Felony."[2]).  "The defendant is ineligible for probation because it is expressly precluded by statute.  18 U.S.C. § 3561(a)(2)."  PSR ¶ 103.

Moreover, the Court should reject defendant's request for a non-custodial sentence as inappropriate.  Defendant's crime of embezzling $2.8 million from his employer was serious and sustained over eight years.  PSR ¶ 13.

Defendant's role was essential.  His job duties enabled him to commit the embezzlement as he was senior manager of the accounting department responsible for both receiving the company checks made payable to his employer (Mutual Trading), which he embezzled, and

---

[2] Defendant's offense, bank fraud, in violation of 18 U.S.C. § 1344, is a Class B Felony. PSR ¶ 102.

1   depositing them into the corporate bank account, including the

2   fraudulently opened off-book bank account defendant established with

3   his co-schemer Hiroyuki Kodama.[3]  Because of defendant's and co-

4   schemer Kodama's roles at the company, the embezzlement was difficult

5   for the company to detect.  By essentially stealing checks made

6   payable to his company and diverting them into an off-book bank

7   account, defendant's criminal conduct was integral to a scheme to

8   defraud his employer of more than $2.8 million.

9        Defendant minimizes acceptance of responsibility for his own

10   conduct when he casts blame on "psychological reasons" arising from

11   his relationship with his father and then his co-schemer, Kodama.

12   (Def. Sen. Pos. at 21-24).  For defendant to deflect responsibility

13   for his crime on "bunch[ing] my boss, [co-schemer] Kodama, together

14   with my father," does a disservice to and contradicts how he was

15   raised by his father.  For, as defendant stated, simply put, "my

16   father would never have asked me to break the law."  (Def. Sen. Pos.

17   at 5).  By his own admission, "[h]e was raised in a traditional and

18   conforming Japanese American family and was inculcated with strict

19   moral and ethical standards from an early age."  (Def. Sen. Pos. at

20   2).

21        Unlike many other criminal defendants, defendant was raised in a

22   supportive family and afforded the benefits of higher education and

23   job experience that make his violation of the laws particularly

24   egregious.  Defendant was well positioned as the senior manager of

25   the accounting department to assess the risks associated from

26

27        [3] Co-schemer Kodama was charged in United States v. Hiroyuki
     Kodama, CR 20-624-FMO and scheduled for sentencing on February 3,

28   2022.

1  stealing from his employer.  Unlike many other offenders, defendant
2  enjoyed economic opportunities; there was no financial motive to
3  break the law.  However, he made calculated choices to steal, which
4  render more aggravating his escalating pattern of dishonest conduct
5  since he was in a position of trust at the company.

6     As further mitigation, defendant says that "[h]e has learned a
7  lesson he will never forget" and that "the personal and psychological
8  agony he has suffered are a substantial deterrent."  (Def. Sen. Pos.
9  at 26).  But, in addition to specific deterrence, another important
10  goal of sentencing is general deterrence.

11     "[G]eneral deterrence is an important factor in white-collar
12  cases, where the motivation is greed. . . . we have set aside
13  sentence of little or no imprisonment because they do not constitute
14  just punishment for the offense, do not promote respect for the law,
15  and will not do much to deter similar criminal activity by others."
16  United States v. Hayes, 762 F.3d 1300, 1308 (11th Cir. 2014).  In
17  addition, because "fraud-based crimes are more rational, cool, and
18  calculated than sudden crimes of passion or opportunity, these crimes
19  are prime candidates for general deterrence."  United States v.
20  Musgrave, 761 F.3d 602, 609 (6th Cir. 2014).

21     Significantly, a sentence of no custody will not deter a person
22  in a position of trust from embezzling from his employer.  It has
23  been said that the true test of character is what you do when no one
24  is watching.  Indeed, the integrity of a senior manager of the
25  accounting department is of the utmost importance to a company's
26  fiscal operations, especially because it would be very difficult for
27  a company, let alone outside law enforcement, to uncover this type of

28

4

1    scheme since the accounting manager can hide the scheme from his

2    employer, which defendant, in fact, did in this case by falsifying

3    the company's accounting records.  PSR ¶ 18.

4        Accordingly, a custodial sentence is necessary to promote

5    respect for the law and deter others, not only this defendant, from

6    engaging in similar schemes and making a calculated decision that the

7    low risk of first being caught and second actually sentenced to

8    custody is worth the financial gain.

9        **B.   Defendant Should be Ordered to Pay Full Restitution**

10       With regard to defendant's argument that his prior restitution

11   payment is a mitigating factor, (Def. Sen. Pos. at 10-12), the

12   adjustment under U.S.S.G. § 3E1.1 already accounts for the partial

13   payment of restitution prior to adjudication of guilt.  <u>See</u> U.S.S.G.

14   § 3E1.1, comment. (n.1.(C))  Critically, defendant did not

15   voluntarily repay the victim on his own initiative.  Defendant was

16   already obligated, by the state court, to pay restitution and agreed

17   to make payments, but only after he was sued in a civil lawsuit and a

18   default judgment was entered against him.  PSR ¶ 6, n.1.  Defendant

19   stipulated to a settlement agreement to pay, but, again, only after

20   the default judgment and in exchange for the case being dismissed

21   again him.  <u>Id.</u>

22       Under the Sentencing Guidelines, a defendant who enters into a

23   plea agreement but does not agree to pay restitution to the victim of

24   his offense generally does not qualify for a reduction under § 3E1.1.

25   Any additional departures based on a defendant's acceptance of

26   responsibility, including those based on pre-trial restitution, are

27   appropriate where the factor is present to a degree substantially in

28

excess of that which ordinarily is involved in the offense or where there is independent motivation to make the victim whole, rather than the merely the more common motivation to reduce a sentence when faced with prosecution or, here, with there was a pending civil lawsuit. U.S.S.G. § 5K2.0; United States v. Martin, 363 F.3d 25, 47 (1st Cir. 2001) (holding that departing below the guidelines for presentence rehabilitation, including restitution, are "hen's-teeth rare," and precedent makes clear that such departures are to be granted sparingly); United States v. Miller, 991 F.2d 552, 553–54 (9th Cir. 1993) (holding that a departure for extraordinary acceptance of responsibility based on restitution must include "genuinely voluntary" payment not "motivated primarily by ... a desire to settle [a] civil lawsuit"). Substituting restitution in lieu of a term of custody is misguided. In short, defendant's partial, albeit substantial, restitution is part of defendant's acceptance of his responsibility and he would have had to pay back the victim in any event in the civil case that exposed his theft. Nonetheless, the government did take into account that defendant made a substantial repayment as one mitigating factor in moving for a significant (five-level) downward variance. (Govt. Sen. Pos. at 15).

With regard to lowering (or apportioning) the restitution, defendant claims he is "only responsible for paying back what he took, which he has done." (Def. Sen. Pos. at 12). Defendant's position is inaccurate, legally and factually. First, defendant's reliance on 18 U.S.C. § 3664(h) is misplaced.[4] (Def. Sen. Pos. at 11-12). That statute (Procedure for issuance and enforcement of order

---

[4] The operative statute is 18 U.S.C. §3664(h); defendant's citation to § 3644(h) is a typographical error.

of restitution) provides, in relevant part, that the court "may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." Defendant's payments to the victim company do not necessarily account for all the money he may have gained from the embezzlement. An FBI forensic accountant concluded that of the total loss amount of $2,817,691 in embezzled funds, $1,023,719 was directly traceable to defendant;[5] $1,121,701 was directly traceable to co-schemer Kodama; however, the remainder amount of approximately $500,000 could not specifically be attributed to either defendant or co-schemer Kodama, but it is still part of the embezzlement loss.

Further, under the law, which defendant does not dispute, defendant is liable for the full loss of $2.8 million, including the portion that directly benefited his co-schemer Kodama, as well as the portion that could not be directly traced to either defendant or Kodama. Defendant is factually and legally responsible for the full amount of loss and participated in the embezzlement from the beginning.

To briefly recount, on March 18, 2010,[6] without the knowledge and authorization of the victim company, defendant and his co-schemer Kodama opened a bank account in the company's name. PSR ¶ 14. Defendant and Kodama were the only signatories on the fraudulent account. In opening the fraudulent bank account, defendant and

---

[5] $1,166,896 is the amount of the civil settlement. PSR at p. 4, n. 1.

[6] Defendant's reference to "one day in 2013" he and co-schemer came up with the idea to open up a bank account into which they would divert and deposit company checks is incorrect as to the year. The account was opened on March 18, 2010. PSR ¶ 14.

Kodama falsely represented to the bank that a meeting of the company's board of directors had been held at which the board had adopted a resolution authorizing the opening of the account, which defendant knew was untrue. PSR ¶ 15. In his role as senior manager of the accounting department, defendant took possession of checks mailed to the company and fraudulently diverted these checks by endorsing and depositing them into the above-referenced fraudulent bank account without the knowledge and authorization of the company. Defendant concealed from the bank that the deposits into and withdrawals from the fraudulent bank account were not authorized by their company. PSR ¶ 17. In order to further and conceal the scheme, defendant falsified the company's books and records by failing to include any reference to the fraudulent bank account and the funds it held in the company's books and records and failing to record the deposits of checks made payable to the company into the fraudulent bank account. PSR ¶ 18. Accordingly, defendant does not qualify under § 3664 for reduced restitution because his level of contribution to the victim's loss was substantial.

The Court should hold both defendants jointly and severally liable for the full losses. See United States v. Rodriguez, 915 F.3d 532, 536 (8th Cir. 2019) (sentencing court ordered defendant, who was convicted of wire fraud, jointly and severally liable under the Mandatory Victims Restitution Act ("MVRA") for the full amount of loss during the time he was active in the criminal enterprise, despite the defendant's contention "that he did not cause the entire loss attributed to him, and because he did not personally gain much from scheme"); United States v. Martinez, 610 F.3d 1216, 1233-34

(10th Cir. 2010) (imposition of joint and several liability "for the $541,370 in unaccounted fraudulent proceeds resulting from the architectural design aspect of the conspiracy. . . "); United States v. Hymas, 582 F.Appx. 770 (9th Cir. July 10, 2014) (sentencing court properly exercised its discretion when it declined the defendant's request to apportion restitution to reflect her low degree of culpability and responsibility for the victim's loss).  The purpose of restitution is "not to punish the defendant, but to make the victim whole again."  United Sates v. Green, 722 F.3d 1146, 1150 (9th Cir. 2013).

Finally, defendant's prior civil settlement with the victim company does not preclude restitution in the full amount of loss, notwithstanding that the company entered into a settlement agreement with defendant for less than the full loss.  "Criminal restitution is mandatory under the MVRA and cannot be waived by a prior civil settlement."  United States v. Edwards, 595 F.3d 1004, 1014 (9th Cir. 1989).

Taking into account the extent and scope of the fraud, the loss, the length of time of the embezzlement, defendant's receipt, deposit, and fraudulent diversion of the embezzled checks funds from his corporate employer in his capacity as senior manager of the accounting department, and defendant's use of the funds for personal use, which factors are accounted for the advisory guidelines calculations of 41-51 months, a significant downward variance to a 24-month sentence strikes the appropriate balance among the 18 U.S.C. § 3553(a) factors, and is appropriate as sufficient but not greater than necessary sentence to accomplish the goals of sentencing.

**III.   CONCLUSION**

Based on the foregoing reasons, the government respectfully requests that the Court:

a)   find that defendant's post-acceptance and pre-variance advisory guidelines offense level, consistent with the plea agreement, is 24;

b)   grant a two-level downward variance to offense level 22 for the reasons stated above, consistent with the plea agreement, and grant an additional three-level downward variance to offense level 17 for the additional reasons identified in the PSR and Probation Recommendation Letter, and as discussed in the government's sentencing position (CR 26), resulting in an overall post-variance offense level of 17 and a sentencing range of 24-30 months;

c)   impose a sentence of 24 months in custody that appropriately balances the mitigating and aggravating factors in this case; and

d)   order payment of: (1) restitution in the amount of $2,817,691 to be paid to the victim company, Mutual Trading; and (2) a $100 special assessment for the count of conviction.

**CERTIFICATE OF SERVICE**

I, Belinda B. Tunque, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18 years old, and I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION IN RESPONSE TO DEFENDANT STEVE KATSUYA AKUNE'S SENTENCING POSITION** service was:

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By electronic mail delivery, as follows:

**Eduardo Cervantes,**
**U.S. Probation and Pretrial**
**Services Officer**
**U.S. Probation & Pretrial Services**
**Edward R. Roybal Federal Building**
**and U.S. Courthouse**
**255 East Temple Street**
**Suite 1410**
**Los Angeles, CA 90012**

This Certificate is executed on January 31, 2022, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct

*Belinda B. Tunque*